1    AMOS LEJON McCLENDON

2    C.D.C.# V-35153

3    P.O.BOX 8501

4    Coalinga,California 93210

5

6    Petitioner/Pro Se

7

8

9

10

11

12           IN THE UNITED STATES DISTRICT COURT

13        FOR THE CENTRAL DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| **AMOS LEJON McCLENDON,** | EDCV 07-1059-DDP (MAN) |
| Petitioner, | **PETITIONER'S TRAVERSE** |
| v. | WRIT OF HABEAS CORPUS AND MEMORANDUM OF |
| **JAMES YATES, Warden,** | POINTS AND AUTHORIITES IN SUPPORT OF ANSWER TO |
| Respondent. | WRIT OF HABEAS CORPUS |

20   TO: THE UNITED STATES DISTRICT JUDGE/MAGISTRATE AND RESPONDENT:

21        Petitioner submits thefollowing opposition:

22                    **I.**

23             **JUDGMENT**

24      McClendon **not in legal custody** of Respondent for kidnaping,

25   kidnaping for rape, carjacking, rape, second degree robbery, assault by means of

26   force likely to produce great bodily injury, and attempted rape after a jury trial in

27   San Bernardino County Superior Court case number FVA 019505. (Cal. Penal Code

28   ///

1

1 | §§ 209(b)(1); 211, 245(a)(1), 261(a)(2).)  On April 22, 2004, the Honorable Douglas
2 | M. Elwell sentenced McClendon to 37 years to life in state prison.

## II.

## APPELLATE OPINION

In an opinion dated September 7, 2005, in case number E035794, the California Court of Appeal made numerous express and implied factual findings in affirming the rulings and judgment of the trial court.  McClendon has done to show why the presumption of correctness mandated by 28 United States Code section 2254(e)(1) should      apply to these factual findings.  *See Sumner v. Mata,* 449 U.S. 539, 546-48, 101 S. Ct. 764, 66 L. Ed. 2d 722 (1981) (regarding factual findings from an appellate court).

## III.

## AN EVIDENTIARY HEARING IS

McClendon is      entitled to an evidentiary hearing because he generally relies on      same facts as he did in the state courts.  (*See* Pet. at 5a-5f (citing the Reporter's Transcripts)); *also* 28 U.S.C. § 2254(d)(2), (e); *Lambert v. Blodgett,* 393 F.3d 943, 972 (9th Cir. 2004).

## IV.

## THE DEFERENCE PROVISIONS OF 28 U.S.C. § 2254(D) APPLY TO McCLENDON'S PETITION

The deferential standard of federal habeas corpus review established by the Antiterrorism and Effective Death Penalty Act of 1996, 28 United States Code section 2254(d), applies to McClendon's Petition.  Under this standard, this Court must deny claims without de novo review where the state courts previously rejected the claims on the merits, and where these conclusions are not contrary to, nor unreasonable applications of, United States Supreme Court authority, and are not based on an unreasonable determination of the facts.

/ / /

2

**V.**

**EXHAUSTION AND TIMELINESS**

McClendon's petition for review and his petition for writ of habeas corpus in the California Supreme Court exhausted the claims raised in Grounds 2 and 3 of the pending Petition. Although the claim of evidentiary error alleged in Ground 1 has been exhausted as a federal claim, it is plainly merit     and habeas corpus relief as to this claim may

**VI.**

**McCLENDON IS       ENTITLED TO HABEAS RELIEF BASED UPON HIS CLAIM OF SENTENCING ERROR (GROUND 2)**

McClendon  not entitled to habeas relief based upon his claim of sentencing error under *Cunningham v. California*, 549 U.S. ----, -- S.Ct –, 166 L.Ed.2d 856 (2007), since his case on direct appeal was final prior to the issuance of *Cunningham,* and the rule of *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060,   bar the retroactive application of any new rule of law.  In any event, even under *Cunningham* imposition of the upper term sentence did     infringe upon McClendon's constitutional jury trial rights, as his sentence was aggravated by the fact of his prior convictions, for which a jury trial finding is     required.

**VII.**

**STATE COURT RECORDS**

The Warden has lodged the state-court records and incorporates these records with this reference. *See* Rule 5(d) foll. 28 U.S.C. § 2254.

/ / /

/ / /

/ / /

3

# VIII.

## CONCLUSION

The relevant facts and procedural history set forth in the accompanying Memorandum of Points and Authorities are incorporated by reference herein. Except as expressly admitted, Petitioner denies every allegation of the Respondent that claims that Petitioner confinement is in any way improper, that any condition of his confinement is illegal, or that any of his rights have been or are being violated in any way. The direct violation of McClendon's Constitutional rights compels Judicial relief. This Court should deny Respondent's claims with prejudice.

Date:_____

Respectfully submitted,

_____
AMOS LEJON McCLENDON
PETITIONER/PRO SE

80202913.wpd
SD2007701152

4

1

## TABLE OF CONTENTS

2                                                                      **Page**

3 PROCEDURAL HISTORY .......................................... 1

4 STATEMENT OF FACTS .......................................... 2

5       I.  Incident On March 27, 2003 ............................. 3

6      II.  Incident on April 13, 2004, Involving Jane Doe II

7     III.  Defendant's Post-Arrest Admissions ..................... 5

8     IV.  Evidence Of Defendant's Prior Sexual Misconduct
          (Evidence Code Section 1108) .......................... 6

9      V.  Defense Evidence ..................................... 7

10 ARGUMENT .................................................... 8

11     I.  THE  CALIFORNIA  COURT  OF  APPEAL
12        **IMPROPERLY AND UNREASONABLY DID   REJECT**
       McCLENDON'S ARGUMENTS ON THE MERITS ........... 8

13       A.  This Court  **must reject**  State Courts' Rejection
14          Of McClendon's Claims ............................ 8

15       B.  The California Court Of Appeal **improperly**
16          Rejected McClendon's Claim ........................ 9

      C.  The California Courts **impoperly**
17          Rejected McClendon's Claim Of Sentencing Error .... 13

18       D.  The California Supreme Court **improperly**
19          Rejected McClendon's Claim That Trial Counsel
         Provided Ineffective Assistance ...................... 16

20 CONCLUSION .................................................. 17

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

**Page**

3 **Cases**

4

5 *Schardt v. Payne*
414 F.3d 1025 (9th Cir.2005)     14

6 *Apprendi v. New Jersey*
(2000) 530 U.S. 466
7 147 L. Ed.2d 435     14, 15

8 *Blakely v. Washington*
(2004) 542 U.S. 296
9 159 L.Ed.2d 403     14

10 *Blakely v. Washington*
542 U.S. 296
11 124 S. Ct. 2531
159 L. Ed. 2d 403 (2004)
12     2

13 *Brecht v. Abrahamson*
507 U.S. 619
14 113 S. Ct. 1710
123 L. Ed. 2d 353 (1993)     13
15

*Carey v. Musladin*
16 ___ U.S. ___
127 S. Ct. 649
17 166 L. Ed. 2d 482 (2006)     9

18 *Cunningham v. California*
(2007) 549 U.S. ----
19 -- S. Ct –
166 L. Ed. 2d 856     2, 14, 15
20
*Dillard v. Roe*
21 244 F.3d 758 (9th Cir.2001)     13

22 *Early v. Packer*
537 U.S. 3
23 123 S. Ct. 362
154 L. Ed. 2d 263 (2002)     8, 9
24
*Estelle v. McGuire*
25 502 U.S. 62 (1991)     13

26 *Garvin v. Farmon*
258 F.3d 951 (9th Cir. 2001)     3, 8
27
*Hamilton v. Vasquez*
28 17 F.3d 1149 (9th Cir.1994)     13

**TABLE OF AUTHORITIES**  (continued)

**Page**

*Jammal v. Van de Kamp*
926 F.2d 918 (9th Cir.1991)                                    13

*Jeffries v. Blodgett*
5 F.3d 1180 (9th Cir.1993), cert. denied
510 U.S. 1191 (1994)                                          13

*Lambert v. Blodgett*
393 F.3d 943 (9th Cir. 2004)                                  8

*Lockyer v. Andrade*
538 U.S. 63
123 S. Ct. 1166
155 L. Ed. 2d 144 (2003)                                      9

*People v. Black*
(2005) 35 Cal.4th 1238 [*Black I*]                            13

*People v. Black*
(2007) 41 Cal.4th 799, 806 (*Black II*)                       14, 15

*People v. Ledesma*
43 Cal. 3d 171
729 P.2d 839
233 Cal. Rptr. 404 (1987)                                     16

*People v. Rodriguez*
20 Cal.4th 1 (1999)                                           12

*People v. Watson*
46 Cal.2d 818 (1956)                                          12, 13

*Price v. Vincent*
538 U.S. 634
123 S. Ct. 1848
155 L. Ed. 2d 877 (2003)                                      9

*Strickland v. Washington*
466 U.S. 668
104 S. Ct. 2052
80 L. Ed. 2d 674 (1984)                                       16

*Sumner v. Mata,*
449 U.S. 539
101 S. Ct. 764
66 L. Ed. 2d 722 (1981)                                       3

*Taylor v. Maddox*
366 F.3d 992 (9th Cir. 2004)                                  8

*Teague v. Lane*
489 U.S. 288 (1989)                                           14

**TABLE OF AUTHORITIES  (continued)**

**Page**

*Williams v. Taylor*
529 U.S. 362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000)                                          9

*Wilson v. Henry*
185 F.3d 986 (9th Cir. 1999)                                    16

*Woodford v. Visciotti*
537 U.S. 19
123 S. Ct. 357
154 L. Ed. 2d 279 (2002)                                       16

*Yarborough v. Gentry*
540 U.S. 1
124 S. Ct. 1
157 L. Ed. 2d 1 (2003)                                         16


**Statutes**


California Evidence Code
     § 780                                                    11, 12

California Penal Code
     § 209(b)(1)                                                 1
     § 209.5(a)                                                  1
     § 211                                                       1
     § 215(a)                                                    1
     § 245 (a)(1)                                                1
     § 261 (a)(2)
     § 654                                                       2
     § 664/261(a)(2)                                             1
     § 667.8(a)                                                  1
     § 667.61(a)&(d)                                             1


28 United States Code
     § 2254(d)                                                 8, 17
     § 2254(e)(1)                                                3


**Court Rules**


California Rules of Court
     rule 4.421(b)(2)                                            15

## MEMORANDUM OF POINTS AND AUTHORITIES

A jury convicted McClendon of having committed multiple offenses against two separate victims. The California state courts rejected his claims of evidentiary and sentencing error on appeal and on state habeas corpus. He has re-raised them here, but they should fare no better. His Petition should be denied with prejudice.

## PROCEDURAL HISTORY

On March 10, 2004, a San Bernardino County jury convicted McClendon of eight offenses arising from two separate incidents of criminal conduct.[1] In an incident involving Jane Doe I, McClendon was convicted kidnaping for carjacking (Cal. Penal Code § 209.5(a), count 1); kidnaping for rape (Cal. Penal code § 209(b)(1), count 3); carjacking (Cal. Penal Code § 215(a), count 4); rape (Cal. Penal Code § 261 (a)(2), count 5); and second degree robbery (Cal. Penal Code § 211, count 6), and in an incident involving Jane Doe II, McClendon was convicted of assault by means of force likely to produce great bodily injury (Cal. Penal Code § 245 (a)(1), count 7); attempted rape (Cal. Penal Code § 664/261(a)(2), count 8); and second degree robbery (Cal. Penal Code § 211, count 9). The jury also returned true findings on two enhancements alleged as to count 5: i.e., that McClendon kidnaped Jane Doe I for a sexual purpose within the meaning of California Penal Code section 667.8(a), and that the movement of the victim substantially increased the risk of harm within the meaning of California Penal Code section 667.61(a)&(d). (Lodgment 1 ("CT") at 21-27, 227.)

McClendon was sentenced to 37 years to life in state prison, which was comprised of an indeterminate term of 25 years to life for count 5 plus an aggregate determinate term of 12 years for counts 4, 6, 8, and 9 (i.e., the upper term of nine

---

1.  McClendon was found not guilty on one charged offense (count 2).

1

1   years for count 4, consecutive to one third the middle term, or a one-year-term, for
2   each of counts 6, 8, and 9.)  The court stayed sentence on the remaining counts
3   pursuant to California Penal Code section 654.  (CT 234-235.)

4       On September 7, 2005, the California Court of Appeal affirmed the judgment
5   in a reasoned opinion.  The state appellate court rejected McClendon's claims that,
6   *inter alia*, the trial court erred in admitting certain portions of a detective's testimony
7   and in imposing upper term and consecutive sentences under *Blakely v. Washington*,
8   542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).  (Lodgment 3 ("Op.").)

9       McClendon filed a petition for review in the California Supreme Court, re-
10  raising the *Blakely* issue.  (Lodgment 4.)  The state high Court denied the petition on
11  November 22, 2005.  (Lodgment 5.)

12      On June 14, 2006, McClendon filed a petition for writ of habeas corpus in
13  the San Bernardino County Superior Court, claiming that the imposition of upper and
14  consecutive terms were unconstitutional under the United States Supreme Court's
15  decision in *Cunningham v. California* (2007) 549 U.S. ----, -- S. Ct --, 166 L. Ed. 2d
16  856.  (Lodgment 6.)  The superior court denied the habeas petition on June 19, 2006.
17  (Lodgment 7.)

18      On October 23, 2006, McClendon filed a petition for writ of habeas corpus
19  in the California Supreme Court, claiming that his trial counsel provided ineffective
20  assistance in failing to "prepare and present the issues that were alleged in the direct
21  appeal brief . . . ."  (Lodgment 8.)  The Court denied the petition on April 25, 2007.
22  (Lodgment 9.)

23      McClendon filed the pending federal petition in the Southern District on July
24  17, 2007.  The matter was thereafter transferred to this Court.

25                              **STATEMENT OF FACTS**

26      McClendon relies on the state court record and does    seek to introduce
27  new evidence to challenge the state court's factual findings.  (See Pet. at 6-7 (citing
28  to the state court record).)  Accordingly, this Court may rely on the recitation of facts

2

1   by the Court of Appeal in its opinion. 28 U.S.C. § 2254(e)(1); *see Garvin v. Farmon*,

2   258 F.3d 951, 952 (9th Cir. 2001); *Sumner v. Mata*, 449 U.S. 539, 546-47, 101 S. Ct.

3   764, 66 L. Ed. 2d 722 (1981)). The Court of Appeal found as follows (see Opn. at 2-

4   8):

5                    **I. Incident On March 27, 2003**

6           In March 2003, Doe I was a 38-year-old mother of four children. She

7   was pregnant with her fifth child. Doe was not married, but had been

8   involved in a romantic relationship for approximately 14 months.

9           On March 27, 2003, Doe I parked her car, a four-door black Honda, in

10  a shopping center in Rialto. She went into a check cashing store and cashed

11  a $200 check. When she came out, she unlocked her car and got into the

12  driver's seat. Defendant approached and asked Doe I for directions. When

13  she said she did not know, he appeared to leave. However, when Doe I

14  started to close the door, he repeatedly hit her, pushed her into the passenger

15  seat, got into the driver's seat, and drove her car off. Defendant told Doe I

16  that he was going to rape her, and threatened to kill her if she made any mistakes.

17          China Greenlee was at the shopping center on March 27, 2003. She saw

18  defendant approach Doe I, who was entering her four-door black Honda.

19  Greenlee saw defendant push Doe I into the car and repeatedly hit her. She

20  then saw defendant drive the car off. Greenlee immediately called the police

21  on her cellular telephone and reported her observations.

22          Defendant drove the car to a fairly remote area of Frisbee Park, about

23  three miles from the shopping center. He threatened to kill Doe I if she did

24  not obey his orders. He pulled her into the back seat, put on a condom,

25  forced open her legs, hit her abdomen area despite her protests of pregnancy,

26  gripped her neck with one hand, and raped her. When he finished, he drove

27  the car again. While driving away from the park, defendant demanded

28  / / /

3

money.  Doe I handed him some of the proceeds from her just-cashed paycheck.

Near an elementary school, defendant stopped the car, got out, and ran off. With the help of a school crossing guard, Doe I called 911 and reported that she had been raped.

An officer responded to the elementary school. Doe I's hair and clothing were disheveled. She cried and trembled as she rapidly, and at times incoherently, conveyed the details of having been kidnapped, raped and robbed. When the officer took Doe I to Frisbee Park, an investigator assigned to the sex crimes division met with Doe I. The investigator observed that Doe I appeared extremely upset. Her makeup was running and she rocked to and fro while speaking in an elevated voice to another officer.

## II. Incident On April 13, 2003, Involving Jane Doe II

At approximately 4:45 a.m. on April 13, 2003, defendant entered a convenience store in Rialto, where 34-year-old Doe II was working the graveyard shift. Defendant asked Doe II where he could find the canned sodas. Doe II directed defendant to the proper section. Defendant purchased a can of Sierra Mist soda and left.

Within minutes, defendant returned to the store and asked for some matches. He also asked Doe II how old she was and inquired if she "had a man." Doe II provided her age, answered defendant's second question in the affirmative, and gave him a book of matches.

Shortly thereafter, when Doe II was stocking the cooler, she heard the chime of a bell announcing the presence of a customer. Doe II emerged from the cooler and saw defendant standing six to eight inches away from her. She asked defendant if he was going to purchase anything; defendant replied that he only wanted her.  Doe II told him to leave or she would call the

4

police, and went to the telephone. Defendant attacked her, and she ended up on the floor with defendant hitting her repeatedly. He stated that he wanted her "pussy," and pulled at her pants and underwear. Defendant dragged Doe II back to the office area, straddled her, unbuttoned her pants, and hit her. He continued to state that he was "going to get this pussy."" Defendant released Doe II only after she told him that she had AIDS. Defendant got up and asked for money. Doe II went to the cash register and handed approximately $35 to defendant, who then left. Doe II called 911, reported an attempted rape and robbery, and gave a description of defendant. She sustained a number of injuries as a result of the attack upon her. Almost the entire episode was captured on the store's security cameras, which was played for the jury.

Police responding to the 911 call found a Sierra Mist can outside the store. The can was half full and cool to the touch. Defendant's fingerprints were recovered from the can.

## III. Defendant's Post-Arrest Admissions

Defendant was arrested for the robbery and attempted rape of Doe II approximately two and a half hours after the incident at the convenience store. He waived his *Miranda* rights and agreed to be interviewed by Detective Arthur.

Defendant initially denied having been at the convenience store earlier in the morning. He then admitted that he was at the convenience store and admitted that he had gotten into an altercation with the clerk. Defendant also initially denied that any sexual contact occurred, but later told Detective Arthur that Doe II had "bumped or grinded on him."

/ / /

1    Defendant acknowledged that he took money from the convenience
2    store.   He subsequently led the detective to a dumpster located
3    approximately 30 feet from the convenience store, where his jacket and cash
4    in the amount of $34 were found.  Defendant stated that he had smoked 16
5    cocaine-laced cigarettes prior to robbing the store and that he did not feel he
6    should have to go to jail because he had a sickness.

7    Detective Arthur also questioned defendant about the incident involving
8    Doe I. Defendant conceded that he was "probably wrong" to have jumped
9    into Doe I's Honda and admitted that the victim repeatedly asked him not to
10   hurt her. Defendant stated that he had merely asked Doe I for "some sex" and
11   she willingly "gave it to [him]."  Defendant further told the detective that
12   Doe I had voluntarily provided him with her cellular telephone number and
13   stated that the number could be found on a slip of paper in the pocket of his
14   pants, When officers conducted a consensual search of defendant's residence
15   later that day, they were unable to find this slip of paper.

16   **IV. Evidence Of Defendant's Prior Sexual Misconduct (Evidence Code Section**
17   **1108)**

18   S.R. was involved in a sexual relationship with defendant for two and
19   one-half years, commencing sometime in the latter part of 1998. R. testified
20   that defendant raped her on many occasions during their relationship. During
21   these nonconsensual sexual encounters, defendant physically overpowered
22   R., removed her clothing against her will, and held her down by the neck.

23   While in jail, defendant made numerous calls to R. and others, in an
24   attempt to get R. to refuse testifying at defendant's trial. In one call to R.,
25   defendant told her, "I'm so sorry. I'm so sorry for everything [S.]."

26   Another former girlfriend of defendant, who was only 16 years old, also
27   testified. She stated that defendant called her from jail and asked her to "put

28

6

1    hands on" and "bang on," in other words, "beat up" R. to dissuade her from

2    testifying.

## V. Defense Evidence

5        Defendant testified on his own behalf. He claimed that Doe I consented

6    to-indeed, initiated-their consensual sexual encounter.  Defendant testified

7    that after he and Doe I exchanged pleasantries and talked in the shopping

8    mall parking lot, Doe I observed that the weather was windy and invited

9    defendant into the driver's seat of her car.  Doe I then turned over the keys

10   to her Honda and willingly accompanied defendant to Frisbee Park.  There,

11   she "jumped" into the back seat of her car and directed defendant to join her.

12   She then initiated sex with defendant.

13       Defendant made no mention of the incident involving Doe II during

14   direct examination. When questioned about Doe II during cross-examination,

15   defendant testified that he did not "really remember" what he said or did

16   "that night."

17       During closing argument, defense counsel highlighted alleged

18   weaknesses in Doe I's trial testimony.  Counsel suggested that the middle-

19   aged, newly pregnant, unmarried mother of four fabricated a claim of rape

20   to provide a "moral basis for an abortion."

21       As to Doe II, defense counsel urged the jury to reject the conclusion that

22   defendant attempted to rape Doe II.  Counsel emphasized that there was no

23   evidence defendant grabbed Doe II's breasts or genitalia, and argued that his

24   act of "tearing at her clothes and saying, ''I want your pussy,'' [was] simply

25   evidence of an assault."

26   ///

27   ///

28

7

1

**ARGUMENT**

2

**I.**

3

**THE CALIFORNIA COURT OF APPEAL UNREASONABLY AND DID IMPROPERLY REJECT McCLENDON'S**

4

**ARGUMENTS ON THE MERITS**

5

6

McClendon raises three grounds for relief: (1) his constitutional right to a

7

fair trial was violated by the state trial court's erroneous admission of evidence; (2)

8

his constitutional trial rights were violated by the state trial court's imposition of

9

upper term and consecutive sentencing; and (3) his trial counsel provided ineffective

10

assistance by failing to "prepare and present the issues presented in the instant

11

petition." (Pet. at 6-8.) The state court's holdings **are** reasonable **contrary**

12

applications of law, which means that this Court must deny relief. 28 U.S.C. §

13

2254(d).

14

A. **This Court Must Reject The State Courts' Rejection Of McClendon's Claims**

15

16

Since the AEDPA applies to McClendon's claims which the California courts

17

rejected on the merits, in addressing such claims this Court must apply an "intrinsic

18

review" of the record and the now-familiar provisions of 28 U.S.C. § 2254(d). *See*

19

*Lambert v. Blodgett*, 393 F.3d 943, 965, 972 (9th Cir. 2004); *Taylor v. Maddox*, 366

20

F.3d 992, 999-1000 (9th Cir. 2004). This Court is bound by the deferential-review

21

principles of the AEDPA: "[D]eference to state court determinations must follow an

22

adjudication on the merits." *Lambert v. Blodgett*, 393 F.3d at 965-66. The state

23

courts' resolution of these issues by applying California case law, moreover, does

24

suggest any reason to grant relief. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154

25

L. Ed. 2d 263 (2002) (noting that a state court need not be aware of Supreme Court

26

authority "so long as neither the reasoning nor the result of the state-court decision

27

contradicts" this authority).

28

/ / /

1    In determining what constitutes "clearly established federal law" for purposes
2  of the deference standard, only United States Supreme Court holdings from the time
3  the state court rendered its decision are controlling, but not dicta and not circuit court
4  authority. *Carey v. Musladin*, ___ U.S. ___, 127 S. Ct. 649, 653-54, 166 L. Ed. 2d
5  482 (2006); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d
6  389 (2000); *also Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed.
7  2d 144 (2003) (regarding the "governing legal principle or principles set forth by the
8  Supreme Court").   And only some Supreme Court holdings are relevant; holdings
9  that do not bind the state courts, such as an application of the Supreme Court's
10 supervisory power, are "off the table" for AEDPA purposes. *Early v. Packer*, 537
11 U.S. at 10. When a petitioner does not challenge the state court's determination of the
12 evidence, he may receive relief "only if" he establishes that the state-court decisions
13 were "contrary to, or involved an unreasonable application of, clearly established
14 Federal law, as determined by the Supreme Court of the United States." *Price v.*
15 *Vincent*, 538 U.S. 634, 642-43 & n.2, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003)
16 (relying on other decisions from state and federal courts to show that a state court's
17 decision was objectively reasonable); *also Musladin*, 127 S. Ct. at 653-54.

18  **B.   The California Court Of Appeal Did not            Properly Reject**
19        **McClendon's Claim**

20

21    In Ground 1 of the pending Petition, McClendon contends that the state trial
22 court violated his constitutional right to a fair trial by permitting Detective Arthur to
23 opine (while explaining his prior testimony that he wanted to see McClendon "put
24 away") that McClendon was a sexual predator . (Pet. at 6.)

25           McClendon's assertion (Pet. at 6), he did    present this claim
26 to the California Supreme Court in his petition         (*See* Lodgment 4.) The
27 exhaustion of available state remedies is a prerequisite to a federal court's
28 consideration of claims sought to be presented in habeas corpus proceedings. *See*

9

1   *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); 28 U.S.C. §§

2   2254(b). However, notwithstanding the failure of the applicant to exhaust such state

3   remedies, "[a]n application for a writ of habeas corpus may be **ruled on** merits"

4   when it is perfectly clear that an unexhausted claim is "colorable." (28 U.S.C. §§

5   2254(b)(2); *Cassett v. Stewart,* 406 F.3d 614, 624 (9th Cir.2005); *see, also, Rhines*

6   *v. Weber,* 544 U.S. 269, 277 (2005) (stating that the district court would abuse its

7   discretion if it were to grant a stay so that petitioner may exhaust a claim which is

8   "plainly meritless").  Ground 1 clearly does raise a colorable federal claim and

9   habeas relief as to this claim should therefore be **granted on** merits.

10          The California Court of Appeal summarized the procedural background of

11   this claim as follows:

12          During direct examination, Detective Arthur testified that he initiated

13   contact with S.R. in June 2003 after listening to her taped telephone

14   conversations with defendant. The detective stated that R.'s extrajudicial

15   statements to him were consistent with her trial testimony. He, however,

16   acknowledged that R.'s intimidated, emotional demeanor on the stand

17   differed from the forthright and unemotional persona she had presented

18   during their pretrial meeting at the police station. The detective noted that in

19   telephone conversations defendant had with others about R., it appeared that

20   defendant was attempting to enlist assistance to prevent or dissuade R. from

21   testifying. The detective opined that the change in R.'s demeanor was

22   attributable to threats she may have received from defendant's family or

23   friends.

24          During recross-examination, Detective Arthur conceded that his

25   explanation for R.'s changed demeanor was based on his observations, not

26   on any express statement made by the witness. The detective further

27

28

admitted that he "want[ed] to see [defendant] put away," but denied that this "desire" influenced his testimony during the trial.

During redirect examination by the prosecutor, the detective was asked why he wanted to see defendant "put away." The detective responded: "I believe he is a sexual predator." When the prosecutor asked the detective what formed the basis of this opinion, defense counsel objected. The trial court, however, allowed the detective to answer because the defense counsel had "inquired as to this particular witness'[s] state of mind as it reflect[ed] on his credibility," and stated that it was "a fair question to follow-up." The court, therefore, overruled the objection. When the detective started to respond, defense counsel again objected on the basis of hearsay; the court overruled the objection.

Thereafter, Detective Arthur stated his reasons for his opinion. In sum, the detective testified that when he and defendant were discussing the incident involving Doe II, defendant became sexually aroused; and defendant exposed himself to a female jailer during the booking process. (Opn. at 9-10.)

The California Court of Appeal found that the trial court did    abuse its discretion in allowing the prosecution to inquire as to the detective's true reasons ("i.e.,     bias") for wanting McClendon to go to prison. The state appellate court stated as follows:

Evidence impeaching a witness's credibility is relevant. Evidence Code section 780 defines what a jury may consider to appraise the credibility of a witness. "[T]he court or jury may consider . . . any matter that has any tendency in reason to prove or disprove the truthfulness of [a witness's] testimony at the hearing, including but not limited to any of the following: [¶¶] ... [¶¶] (f) The existence or nonexistence of a bias, interest, or other

11

1  motive." (Evid. Code, § 780.) "As with all relevant evidence, however, the
2  trial court retains discretion to admit or exclude evidence offered for
3  impeachment. [Citations.] A trial court's exercise of discretion in admitting
4  or excluding evidence is reviewable for abuse [citation] and will not be
5  disturbed except on a showing the trial court exercised its discretion in an
6  arbitrary, capricious, or patently absurd manner that resulted in a manifest
7  miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1,
8  9-10.) Here, when defense counsel cross-examined Detective Arthur,
9  counsel tried to impeach the detective's credibility by suggesting that he
10  harbored bias or personal animus toward defendant. To accomplish this,
11  defense counsel elicited admissions that the detective wanted to see
12  defendant "put away." This method of cross-examination implied that
13  because of the detective's bias, he had skewed or fabricated his testimony.
14  Having laid this foundation, the prosecution was entitled to rebut the bias
15  charge by exploring the detective's actual motivations for wanting defendant
16  "put away." (Evid. Code, §§ 780, subd. (f); see also Evid. Code, §§ 210
17  [relevant evidence is "evidence, including evidence relevant to the credibility
18  of a witness . . . , having any tendency in reason to prove or disprove any
19  disputed fact that is of consequence to the determination of the action"];
20  *People v. Cash* (2002) 28 Cal.4th 703, 727 [the trial court has broad
21  discretion to determine the relevance of evidence].)

22  (Opn. at 10-11.)

23      The California Court of Appeal further held that "[e]ven if the detective's
24  statement should not have been admitted, the error was harmless in view of the
25  overwhelming evidence of defendant's guilt. No other outcome, favorable to
26  defendant, was reasonably probable." (Opn. at 12 -13), citing *People v. Watson*, 46
27  Cal.2d 818, 836 (1956).)

28  / / /

1    McClendon echoes his claim of evidentiary error in the pending Petition.

2   (Pet. 6.)  It is not the province of federal habeas courts to re-examine state court

3   conclusions regarding matters of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991);

4   *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir.1993), *cert. denied*, 510 U.S. 1191

5   (1994). Claims that evidence was improperly admitted in a state court trial are

6   cognizable in habeas corpus proceedings " when admission of the evidence

7   violated the defendant's due process rights by rendering the proceedings

8   fundamentally unfair." *Hamilton v. Vasquez*, 17 F.3d 1149 (9th Cir.1994) (citing

9   *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.1991)). When considering

10  whether erroneously admitted evidence rendered a trial fundamentally unfair, the

11  federal habeas court must determine whether the error "'had substantial and injurious

12  effect on the jury's verdict.'" *Dillard v. Roe*, 244 F.3d 758, 767 n. 7 (9th Cir.2001)

13  (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d

14  353 (1993).

15    McClendon makes   showing that the admission of the challenged portion

16  of Detective Arthur's testimony rendered his trial fundamentally unfair. As the

17  California Court of Appeal aptly noted, the evidence of McClendon's guilt was

18  overwhelming. McClendon therefore is   entitled to federal habeas relief on the

19  claim alleged in Ground 1 of the pending Petition.

20  **C.  The California Courts Did Not Properly Reject**
    **McClendon's Claim Of Sentencing Error**

21

22    In Ground Two, McClendon contends that the state trial court violated his

23  constitutional trial rights by imposing the upper-term on count 4, and consecutive

24  terms on counts involving the same victim, without affording him a jury trial on these

25  sentencing decisions. (Pet. 8.) The California Court of Appeal rejected McClendon's

26  constitutional argument "for the reasons explained by the California Supreme Court

27  in *People v. Black* (2005) 35 Cal.4th 1238 [*Black I*].)" (Opn. at 14-15.)

28  / / /

13

1  The California courts thereafter denied McClendon's claim on habeas corpus that the

2  imposition of the upper and consecutive terms were unconstitutional under

3  *Cunningham v. California* (2007) 549 U.S. ----, 166 L. Ed. 2d 856 (*Cunningham*), in

4  which the United States Supreme Court concluded that California's determinate

5  sentencing law (DSL) violates a defendant's federal constitutional right to a jury trial

6  by assigning to the trial judge, rather than to the jury, the authority to find the facts

7  that render a defendant eligible for an upper term sentence.  (Lodgment s 7, 9.)

8      McClendon's claim may only be considered with respect to his upper-term

9  challenge, because the California Supreme Court recently concluded that neither

10 *Cunningham* nor its predecessors -- *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147

11 L. Ed.2d 435] (*Apprendi*) and *Blakely v. Washington* (2004) 542 U.S. 296 [159

12 L.Ed.2d 403] (*Blakely*) --"apply to the imposition of consecutive terms."  (*People v.*

13 *Black* (2007) 41 Cal.4th 799, 806 (*Black II*).)

14     As to even the upper-term facet of his sentencing claim, however,

15 McClendon is     entitled to federal habeas relief.  First and foremost, his case was

16 final on direct appeal before *Cunningham* was decided, and the Supreme Court's

17 holding in *Cunningham* does    apply retroactively on federal collateral review to

18 upset a state conviction or sentence.  *See Schardt v. Payne,* 414 F.3d 1025, 1027 (9th

19 Cir.2005); *see also Teague v. Lane,* 489 U.S. 288 (1989).

20     Moreover, as the California Supreme Court ruled in *Black II,* "imposition of

21 the upper term does not infringe upon [a] defendant's constitutional right to jury trial

22 [under *Apprendi, Blakely* and *Cunningham*] so long as one legally sufficient

23 aggravating circumstance has been found to exist by the jury, has been admitted by

24 the defendant, or is justified based upon the defendant's record of prior convictions."

25 *Black II, supra,* 41 Cal.4th at p. 816.   This is because "[u]nder California's

26 determinate sentencing system, the existence of a single aggravating circumstance is

27 legally sufficient to make [a] defendant eligible for the upper term.  [Citation.]

28 Therefore, if one aggravating circumstance has been established in accordance with

14

1   the constitutional requirements set forth in *Blakely*, the defendant is not 'legally

2   entitled' to the middle term sentence, and the upper term sentence is the ''statutory

3   maximum.''' *Id.* at p. 813. And it is only when a sentence goes above the "statutory

4   maximum" that the *Apprendi-Blakely-Cunningham* rule is triggered, requiring a jury

5   to determine sentencing facts; as *Cunningham* explained, "the Federal Constitution's

6   jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a

7   sentence *above the statutory maximum* based on a fact, other than a prior conviction,

8   not found by a jury or admitted by the defendant .''" (*Cunningham, supra,* 549 U.S.

9   at p. ---- [166 L. Ed. 2d at p. 864], italics added; *Apprendi, supra,* 530 U.S. at p. 490.)

10      Here, the state trial court imposed the upper term on count 4 based, in part,

11   on the fact that McClendon suffered prior convictions which indicated a pattern of

12   increasingly serious criminal conduct.   Specifically, the court observed that

13   McClendon's previous convictions "went from misdemeanor possession of less than

14   an ounce of marijuana . . . to obstructing or delaying a public officer[] . . . to assault

15   with force likely to cause great bodily injury and criminal threats . . ." The court

16   further noted that McClendon's probation had been revoked on two different

17   occasions. (Lodgment 2 "RT" 865-866; see also Cal. Rules of Court, rule 4.421(b)(2)

18   [defining an aggravating circumstance as including the circumstance of numerous

19   prior convictions]; *Black II, supra,* 41 Cal.4th at p. 818 .)

20      As discussed, "[t]he United States Supreme Court consistently has stated that

21   the right to a jury trial does not apply to the fact of a prior conviction." (*Black II,*

22   *supra,* at p. 818.) Consequently, under *Black II,* the state trial court's imposition of

23   the upper term on count 4 did    violate defendant's constitutional right to jury trial

24   under *Apprendi-Blakely-Cunningham.* Federal habeas relief must

25   as to Ground 2 of the pending Petition.

26   / / /

27   / / /

28   / / /

**D. The California Supreme Court Did Not Properly Reject McClendon's Claim That Trial Counsel Provided Ineffective Assistance**

In Ground 3, McClendon argues that his trial counsel provided ineffective assistance by failing "prepare and present the issues raised in the instant petition." (Pet. at 8.)  The California Supreme Court rejected this contention on the merits by rejecting McClendon's habeas corpus petition. (Lodgment 9.)

If a convicted defendant complains that his trial counsel was ineffective, he must show that the legal representation fell below an objective standard of reasonableness as gauged by prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *People v. Ledesma*, 43 Cal. 3d 171, 215, 218, 729 P.2d 839, 233 Cal. Rptr. 404 (1987) (noting that California courts follow *Strickland*).  A petitioner must also prove prejudice because even a professionally unreasonable error "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, at 691.

When evaluating a *Strickland* claim, federal courts "need not decide whether counsel's performance was deficient before determining whether any prejudice was suffered by the defendant because of the alleged errors." *Wilson v. Henry*, 185 F.3d 986, 988 (9th Cir. 1999).  A habeas petitioner alleging ineffective assistance of counsel bears a double burden to overcome the deference owed a trial counsel's discretionary choices and the deference mandated by the AEDPA. *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4, 157 L. Ed. 2d 1 (2003); *see Woodford v. Visciotti*, 537 U.S. 19, 25-27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (finding that the California Supreme Court's resolution of a *Strickland* claim was "not 'unreasonable'").

As discussed *supra*, McClendon's claims of evidentiary error and sentencing error were improperly denied by state courts and do warrant relief from the state court judgment. Since McClendon has come close to demonstrating an

16

1  error in the state court's resolution of these claims, he certainly can   carry his

2  burden of demonstrating deficient performance or resulting prejudice under 28 U.S.C.

3  § 2254(d).

### CONCLUSION

Accordingly, **Petitioner here**   requests that the **writ issue.**

Dated: Fcbvary 28, 2008

Respectfully submitted,

AMOS LEJON McCLENDON/PETITIONER

80202913.wpd
SD2007701152

17

## PROOF OF SERVICE BY A STATE PRISONER

I, _Amos McClendon_ ,declare:

That I am over 18 years of age, and a party/not a party to the attached herein cause of action, that I reside at Pleasant Valley State Prison,in the county of Fresno California. My mailing address is: _P.O. Box 8501, Coalinga, Ca. 93210_

On _Febuary 28_ , 200_8_, I handed to prison officials for mailing, at the above address, on the exact date, the attached: _Traverse_

In a sealed envelope[s] with postage paid fully paid,addressed to the locations:

(A) _United States District Court, Central District of California_ _312 N. Spring, Los Angeles, Ca. 90012_

(B) _OFFice of Attorney General at West A Street, Suite 1100 P.O. Box 85266, San Diego. 92186-5266_

(C) _____

(D) _____

I declare under penalty of perjury that the foregoing is true and correct. Executed this (_28_) day of (_Febuary_), 200_8_ at Coalinga, California.

_Amos L M?_
DECLARANT SIGNATURE

_Amos L. McClendon_
DECLARANT PRINTED
NAME